JOHN HANBY FOARD, by His Next Friend, CHARLES D. FOARD, v. THE TIDEWATER POWER COMPANY.

(Filed 10 November, 1915.)

1. **Carriers of Passengers — Street Railways — Crossties — Right of Way—Negligence—Evidence.**

    Crossties left on the right of way of a power transportation company which had been repairing its railway track afford no evidence of negligence in an action to recover damages of the company for a personal injury alleged to have been inflicted in consequence thereof.

2. **Carriers of Passengers—Street Railways—Pedestrians—Crossing Track—Place of Safety—Contributors—Negligence.**

    Where a pedestrian using the track of a railway company is in a place of safety and seeing a rapidly moving car approach about fourteen feet away, and knowing the danger, attempts to cross the track and is injured, the rule requiring the employees on the car to give warnings of its approach has no application, and there being no evidence of the company's negligence, the contributory negligence of the pedestrian bars his recovery in an action for damages against the company.

3. **Carriers of Passengers—Street Railways—Contributory Negligence—Nonsuit.**

    Where it appears by the plaintiff's own evidence, in his action to recover damages for a personal injury he alleges to have been inflicted on him by the defendant's negligence, that the proximate cause of the injury was the contributory negligence of the plaintiff, a judgment as of nonsuit thereon is proper.

4. **Same—Children—Evidence.**

    The rule that the contributory negligence will bar the right of recovery of one who knowingly leaves a place of safety and attempts to cross a car track in the face of danger, and is injured by a rapidly moving street car, which he, at the time, saw about fourteen feet away, applies to children eleven years of age who are shown to have been intelligent, were accustomed to ride on the cars and evidently appreciated the danger in taking such risks.

APPEAL by defendant from *Allen, J.,* at the December Term, 1914, of NEW HANOVER.

Civil action tried upon these issues:

1. Was the plaintiff injured by the negligence of defendant, as alleged in the complaint? Answer: "Yes."

2. Did plaintiff, by his own negligence, contribute to his injuries, as alleged? Answer: "No."

3. What damage, if any, is plaintiff entitled to recover of defendant? Answer: "Fifteen hundred dollars ($1,500)."

From the judgment rendered, defendant appealed.

*John D. Bellamy & Son for the plaintiff.*
*Davis & Davis for the defendant.*

BROWN, J. The defendant made the usual motion to nonsuit, which was overruled. This is assigned as error.

The plaintiff was struck and injured by defendant's motor car while walking along the right of way on the north side of the track and just outside the edge of the crossties near Light House Station, at Wrightsville. He was not a passenger and had no immediate intention of becoming one, but was going to the water to secure a boat for fishing. The defendant had been repairing its roadbed, and crossties were piled on the right of way and along the track. The plaintiff, when struck, was between these ties and the track.

The allegations of negligence are that the defendant had piled these crossties four feet high along the track so that plaintiff was compelled to walk between the ties and the track, in consequence of which he was struck by defendant's car, and that the car was being run at an excessive rate of speed and failed to give any signal.

We are unable to discover wherein the defendant failed in the performance of any duty it owed the plaintiff, and that is the test of negligence. It had a right to pile its crossties on its right of way. It had no other place to pile them.

The approach to the station was not obstructed, and if it was, plaintiff was not seeking the station, but was on his way fishing. As to the excessive speed, all the evidence fixes it at twelve to twenty miles an hour. It is a matter of common observation that trolley cars run from twelve to twenty miles an hour and are stopped with extraordinary suddenness and with perfect safety. One witness says the speed was *"unusual,"* but there is no evidence that it was dangerous or reckless. But assuming that to be true, it was not the proximate cause of plaintiff's injury.

The car was only fourteen feet from plaintiff when he saw it, and he left his safe position and started between the track and crossties. The motorman had the right to suppose that the plaintiff would remain

4—170

where he was. It is not pretended that the motorman could then stop his car and avoid the injury after plaintiff advanced between the track and the ties. No such issue was tendered.

However this may be, we think that the motion to nonsuit should be allowed upon plaintiff's own evidence. It is well settled that where upon plaintiff's testimony he is guilty of contributory negligence, the motion to nonsuit should be sustained.

The plaintiff testified: "When I first saw the car, it had passed on the ground from the trestle. I had not then reached the light house. When I was hurt, I was not near the door of the light house. I had not gotten to the pole in front of the door of the light house. I saw the train fourteen feet off. I was not on the track then. I was far enough from the track to keep from getting hit."

He repeated the statement that he was not on the track when he saw the car approaching and not on the crossties. When plaintiff saw the car approaching, he was, according to his own admission, in a place of safety, and had he remained there and not ventured further on between the pile of ties and the track, he would not have been hurt.

It is immaterial whether the motorman whistled or not. The plaintiff actually saw the car approaching, and surely he could not have better notice than his own eyes gave him. He should have stopped and let the car pass. He was in a place of perfect safety, and he should have remained there.

There is no evidence and no finding that after the plaintiff walked on between the ties and the track the motorman could have stopped the car in time to avoid injuring him.

Upon these facts, it requires no citation of authority to sustain the proposition that plaintiff cannot recover unless because of his age he is by law relieved of the consequences of his own negligence.

The plaintiff, at the time of the accident, was a boy of eleven years of age. The testimony introduced shows him to be a bright boy with average intelligence. The plaintiff testified that he had been getting on and off cars for the past four or five years; and his father testified that he was a boy of intelligence and had the capacity to understand the dangers of a street car. The plaintiff's witness, Dr. Cranmer, testified that he considered him to be a fairly bright boy, good average intelligence.

All the evidence, without contradiction, shows the plaintiff to be capable of understanding and appreciating the danger of leaving his position of perfect safety and venturing between the pile of ties and the track in front of a rapidly approaching car. It requires no great degree of intelligence or of experience to understand that it is dangerous to get in front or very near a rapidly moving car. Dumb animals understand

this quite as well as human beings. In this case it is not a question to be submitted to a jury. The facts are uncontradicted.

There is no evidence or even a claim that plaintiff was overcome by fright, and on account of his youth "lost his head" and rushed from a place of safety into a place of danger. It is a fair inference that he was in too much of a hurry to reach the water and tried to "beat the car" and get out on the other side of the ties before the car could get there. The action was probably due to the temerity of youth rather than to the irresponsibility of a mere child.

In *Baker v. R. R.,* 150 N. C., 562, this subject was fully discussed, and it was held by a unanimous Court that "The inquiry, 'At what age must an infant's responsibility for negligence be presumed to commence?' cannot be answered by referring it to a jury. That would furnish us with no rule whatever. It would simply produce a shifting standard, according to the sympathies or prejudices of those who compose each particular jury. One jury might fix the age at fourteen and another at eighteeen and another at twenty."

In *Tucker v. R. R.,* 124 N. Y., 308, the Court of Appeals of New York says: "The question at what age an infant's responsibility for negligence may be presumed to commence is not one of fact, but of law. In the absence of evidence tending to show that a boy of twelve years of age was not qualified to understand the danger and appreciate the necessity for observing that degree of caution in crossing a railroad track an adult would, he must be deemed *sui juris* and chargeable with the same measure of caution as an adult."

In the *Baker case, supra,* it is further said: "From all these and other approved authorities, the principle is deduced that an infant, so far as he is personally concerned, is held to such care and prudence as is usual among children of the same age; and if his own act directly brings the injury upon him, while the negligence of the defendant is only such as exposes the infant to the possibility of an injury, the latter cannot recover. The Supreme Court of the United States has substantially held the same to be sound law in the cases above cited."

In *Meredith v. R. R.,* 108 N. C., 616, the Court says: "The witnesses concur in the statement that the boy who was injured was an intelligent youth, about thirteen years old. In the absence of knowledge or information to the contrary, the engineer was justified in supposing that he would look to his own safety, even when trains were moving on three parallel tracks, if there was manifestly an opportunity to escape by walking across the railway to a neighboring sidetrack."

Again: "The boy injured was described by witnesses as being bright and smart; but if he was apparently capable of appreciating his peril or his situation, it is sufficient to relieve the servants of the company

from the imputation of carelessness in assuming that he would step aside before the engine reached him."

We find in the books many cases where children of various ages from six years upwards have been held responsible for their negligent conduct. *Meredith v. R. R.*, 108 N. C., 616—13 years of age; *Nagle v. R. R.* (Pa.), 32 Am. Rep., 414—14 years of age; *Rockford v. Delaney* (Ill.), 25 Am. Rep., 308—under 14; *Dull v. R. R.* (Ind.), 52 N. E., 1013 —11 years; *Fray v. R. R.*, 159 Mass., 238—10 years; *Moore v. R. R.* (Pa.), 44 Am. Rep., 106—10 years; *Cosgrove v. Ogden*, 49 N. Y., 255—6 years; *R. R. v. Cornell* (Pa.), 32 Am. Rep., 472—6 years and 9 months; *Briscoe v. Power Co.*, 148 N. C., 396—13 years; *Murray v. R. R.*, 93 N. C., 92—child of 8 jumping switch engine; *Conley v. R. R.*, 4 Am. R. R. and E. R. R. Cases, 533—7 years; *Meeks v. R. R.*, 52 Cal., 602—6 years; *Manly v. R. R.*, 74 N. C., 655—10 years; *Studer v. R. R.*, 121 Cal., 400—12 years; *Masser v. R. R.*, 61 Ia., 602—11 years.

The motion to nonsuit is allowed.

Reversed.