W. A. FRY, ADMINISTRATOR, v. SOUTHERN PUBLIC UTILITIES COMPANY AND STANDARD ICE AND FUEL COMPANY.

(Filed 5 April, 1922.)

1. **Negligence—Children—Employer and Employee—Master and Servant —Instructions of Master—Custom—Waiver.**

Where there is evidence that the plaintiff's intestate, a boy under twelve years of age, was killed by the negligence of the defendant's driver on its ice wagon as the intestate was riding on the rear step thereof, and the defendant has introduced evidence that it had instructed its drivers not to permit children to ride on its wagons, it is competent for the plaintiff to show that the observance of this instruction was not insisted on, and its nonobservance was either known to the defendant or should have been known from its long continued violation, and that therefore the defendant had either acquiesced therein, or had consented to its repeal, or waived obedience to it.

2. **Same—Cities and Towns—Ordinances.**

Where there is evidence that the plaintiff's intestate, a boy about twelve years of age, was killed by the negligence of the driver on defendant's ice wagon, while the intestate was riding on the rear step of the wagon, in attempting to drive across a track in front of a moving street car, and the defendant has introduced an ordinance of the city prohibiting children from riding on wagons of this kind without the consent of the driver, evidence that children were habitually accustomed to ride on these wagons and were encouraged therein by the defendant's drivers, and that the driver of this particular wagon saw the intestate at the time he was riding thereon, and consented to his riding thereon, is sufficient to show that the intestate was not acting in violation of the ordinance in question.

3. **Same.**

Where defendant ice company has permitted the custom of children to ride on its wagon in delivering ice to become established in violation of a city ordinance, it cannot take advantage of its own wrong by setting up the ordinance in defense to an action for the negligent killing of the plaintiff's intestate, a boy about twelve years of age, upon the ground that the intestate was himself violating the ordinance at the time he was killed.

**4. Negligence — Contributory Negligence — Children—Instructions—Appeal and Error.**

While a child is not held to the same accountability as one of mature years for contributory negligence, it is held to that degree of care that ordinary prudence would require one having the mental and physical development of the particular child, under the circumstances of the injury; and an instruction that a boy, something less than twelve years of age, could not be guilty of contributory negligence, and also omitting the element of proximate cause, or the last clear chance, is reversible error.

**5. Negligence—Wantonness—Contributory Negligence—Defenses.**

The doctrine of contributory negligence does not apply when the defendant's negligence in causing the injury in question is reckless, wanton, and in total disregard of the plaintiff's rights, and the verdict of the jury upon a trial involving this question may be construed as an affirmative finding when it so appears if viewed in the light of the charge and the evidence in the case.

**6. Same—Evidence—Employer and Employee—Master and Servant—Respondeat Superior—Appeal and Error—New Trials.**

There was evidence in this case that the driver of the defendant's ice wagon knew that the plaintiff's intestate, a boy about twelve years of age, was riding on the rear step of the wagon, contrary to a city ordinance, and that a collision proximately caused the death of the intestate as the driver, at a place forbidden by the city ordinance, attempted to drive diagonally across a street car track in front of a rapidly moving street car, where the situation itself and the time of the act was observably dangerous for such purpose: *Held*, while the violation of the ordinance is not alone conclusive, it, with the other evidence, is sufficient to sustain a verdict of the jury finding that the negligence of the driver was reckless and wanton, and in utter disregard of the intestate's rights, for which the defendant is responsible as principal under the doctrine of *respondeat superior*, if it was the proximate cause of the injury alleged.

CLARK, C. J., concurring in new trial.

APPEAL by defendant Standard Ice and Fuel Company from *Lane, J.*, at the May Term, 1921, of MECKLENBURG.

This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the defendant Standard Ice and Fuel Company's negligence.

On 28 June, 1919, plaintiff's son and intestate, Perry Fry, was instantly killed in a collision between an ice wagon of the Standard Ice and Fuel Company and a street car of the Charlotte Street Railway Company, at a point on Tryon Street about fifty feet south of the intersection made by Tryon and Ninth streets in the city of Charlotte. On that day Perry Fry was under 12 years of age, his exact age being 11 years, 10 months, and 23 days.

The railway company was repairing its tracks on North Tryon Street from Seventh to Ninth streets, and had dug up the concrete from be-

tween the rails and placed it in a pile, about two feet wide at the bottom and eighteen inches to two feet in height, at the end of the crossties along the east side of the track, which had so narrowed the driveway on the right or east side of the street that there was room for only one vehicle to travel at a time from Seventh to Ninth Street. This pile of concrete extended from Seventh Street to Ninth Street, with the exception of an open space about thirty feet in length just south of and about fifty feet distant from Ninth Street. It was in this open space that the collision occurred.

It was Saturday afternoon, about 4:30 o'clock, and the ice wagon, having completed its work for the day on Seventh Street, came out of Seventh into Tryon and proceeded northward on Tryon on its return to the ice plant, traveling on the east side of the street between the piled-up concrete and the curb-stone of the sidewalk. C. L. Hill, the white man in charge of the wagon, and whose duty it was to ride on the rear step of the wagon, had abandoned the wagon at Seventh Street, entrusting its safe return to the plant to the negro driver, Will Ferguson, and a half-grown negro helper, Robert Kinston. The latter, who was riding in the front seat with the driver, was so engrossed in eating his delayed mid-day lunch that he had no knowledge of the collision or its attendant circumstances except that the impact thereof threw him out of the wagon.

Somewhere between Seventh Street and the point of collision, a very congested section of the city, Perry Fry, and another small boy of about the same age, got on the rear step of the ice wagon, young Fry riding on that end of the step nearest the car tracks. This step was fourteen inches from the ground. Before reaching the open space the driver heard boys' voices behind his wagon, and on looking back saw young Fry riding upon the rear step. When the wagon came to the open space in the pile of cement fifty feet south of Ninth Street, the horses, without warning, were driven upon the street car track in a diagonal course toward West Ninth Street, and very near an approaching street car. The front wheels of the ice wagon were upon the car track when the street car, also running north, struck the hub of the left front wheel of the wagon, knocking the front of the wagon away from the tracks and throwing the rear of the wagon in toward the street car. Young Fry was thrown from the rear of the ice wagon under the street car between the trucks, and when the car was stopped within its own length he was lying under the rear trucks of the street car. The left horse was down on the track with its feet in the fender of the car. Young Fry was dead when removed from under the street car.

It had been the custom for many years for little children to ride upon the rear step of defendant's wagons for the pleasure of the ride as well

as to get ice. This custom was known to the defendant, and had been constantly permitted by the drivers of its wagons. There was danger in children thus riding on the wagons of this defendant, which was also known to the defendant.

The city of Charlotte had, before the time of this fatality, adopted the following ordinance, which was then in force: "No vehicle shall be turned unless a signal shall previously be given by the whip or hand indicating the direction in which the turn is to be made. The driver of any vehicle, upon a track in front of a street car, shall, upon signal from the driver or motorman of said car, turn to the right of the track. The vehicles moving slowly shall keep as close as possible to the curb on the right of the street, allowing more swiftly moving vehicles free passage to their left. A vehicle overtaking another shall pass on the left side of the overtaken vehicle, and shall not pull over to the right until entirely clear of the vehicle passed. A vehicle, when turning to the left to enter an intersecting street, shall slow down to a speed of five miles per hour, and shall not turn until it shall have passed beyond the center of such intersecting street."

There was testimony that the defendant had knowledge of this custom of small children riding on its wagons, and also that it had actual knowledge, through its driver, that the small Fry boy was on its wagon some time before the collision occurred which resulted in his death. Will Ferguson, the driver, testified: "As I was driving down Tryon Street that afternoon, between Eighth and Ninth streets, there was an opening just ahead of the left side where no broken concrete and rock had been piled upon or in the street. I heard a boy's voice behind my wagon say 'Come on up,' 'Come on up,' and I looked around through the wagon and saw this little white boy who got killed standing on the rear step." The driver did not stop to put the boy off, nor did he tell him to get off. He drove his wagon through the open space 50 feet from the street intersection and upon the car track and close to the approaching street car. W. J. Dellinger testified that when the wagon looked like it was going to cross, "the street car was not far south of that open space, they were right close together." R. F. Rankin testified: "The street car and the ice wagon were very close together when I noticed the ice wagon," before the collision. Willie Wilson, who was on the street car, testified that the "car was somewhere about the middle of the block" when the horses started upon the tracks. R. A. Galloway testified that the horses' heads were about six feet from the open space when the car was about the middle of the block. Neal Elliott, the motorman, testified that the car was only fifteen feet away when the horses started upon the track. M. T. Kelley, Fred Stewart, and W. P. Chambers testified that the street car was twenty feet away when the horses started to cross the

track. Not only was the wagon driven upon the car tracks in close proximity to the approaching car, but in turning to cross the tracks the driver did not hold out his hand or give any signal of his intention to cross. Neal Elliott, the motorman, testified, "The driver did not throw out his hand or warn me." Fred Stewart, who was standing at the corner of Ninth Street in front of the wagon and in a position to see the actions of the driver, testified: "Saw the ice wagon and the driver when the horses started across the track. The driver just started across there and the street car hit the front wheel. Did not see the driver throw out his arm; he did not throw out anything. He did not look." This witness further testified: "The driver of the ice wagon was not paying any attention to anybody or anything. He did not look to the side of him, nor behind him, nor do anything except to drive the horses across there at a slow trot; he moved across diagonally."

The driver of the wagon testified that just as he reached this open space an automobile passed on his right next to the curb, and that as a result his horses shied and thus got upon the car tracks. Nowhere do we find in the record any evidence which supports the testimony of the driver in this regard. The eye-witnesses introduced by both the plaintiff and the defendant, except the driver, said the horses were driven upon the tracks, and that no automobile passed the ice wagon at or near the time of the collision. C. G. Terrell, the only eye-witness introduced by the defendant, except the driver, testified: "The horses were responsive to the driver; they moved as if they were being moved by the driver." And again the defendant's same witness testified: "When I saw the horses start to turn across the track the street car was between the center of the block and Ninth Street. The street car was not ringing any bell, and from that time on the horses proceeded diagonally across the track in the open space and the street car came right after them." .

Nor was there sufficient room between the concrete piled up along the rails and the curb for an automobile to pass the ice wagon. W. J. Dellinger testified: "There was plenty of room to go along for one, but I don't hardly believe there was room for two." R. F. Rankin testified: "There was only one passway. This obstruction on the side of the street would not permit but one car to go through there. An automobile could not pass the ice wagon as it was going down there." J. D. Johnson, a police officer, testified: "Two automobiles could not have passed in there from Seventh Street down to Ninth Street with the material piled up there to the right of the rail."

The evidence in the record appears to contradict the driver, and shows that no automobile did pass the ice wagon. W. J. Dellinger, who was driving in an automobile in the same direction with the wagon and about a block and a half behind the ice wagon, testified: "Saw no auto-

mobile behind the ice wagon. Could not see the front of ice wagon. There was not any vehicle to the side or behind it from the time I first saw it and the collision occurred. There was not any automobile passed the ice wagon after I saw it. I did not see an automobile come and go by this ice wagon and cause the horses to shy across the track; none passed the ice wagon. No automobile between me and the ice wagon; nothing but the ice wagon and the street car in front of me." R. F. Rankin, who was in the automobile with Dellinger, testified: "There was no car or other vehicle between me and the ice wagon when I saw it. No car passed the ice wagon about the time of the collision or before. I was going down the street behind the street car and the ice wagon. If there had been an automobile between me and the ice wagon I certainly would have seen it." Even the negro helper, Robert Kinston, riding in the front seat with the driver, saw no automobile pass the ice wagon.

A perusal of the record will tend to show, as the jury evidently found, that Hill, the man in charge of the wagon, had abandoned it at Seventh Street; that the driver drove across the street fifty feet south of the intersection in violation of an ordinance of the city of Charlotte; that in doing so he failed to give any signal or warning of his intention to cross in violation of the ordinance, and that, without looking or listening, and knowing that young Fry was in a position of danger on the back of his wagon, as the evidence tends to show and the jury found, he drove across the street in dangerous proximity to an approaching street car. There was at all events sufficient evidence to carry this question of fact to the jury.

Other material facts will be noticed in the opinion of the Court.

The judge charged the jury, as to the fifth issue, as follows: "If you find by the greater weight of the evidence that the street car in question was being operated at a lawful rate of speed, and that the motorman had given all necessary and proper signals of the approach of the car to the ice wagon in question, and also of his approach to the Ninth Street crossing, notwithstanding which facts, the driver of the ice wagon, after he saw, or by the exercise of ordinary care could have seen, the approach of the street car, negligently and recklessly, without signal or warning of any kind, and without looking or listening, drove his wagon upon, or dangerously near, the said street car track in such close proximity to the approaching street car as to render it impossible for the motorman in charge of said car to avoid a collision with the wagon, either by slackening the speed of his car or stopping the same, after he saw a collision was imminent, and that the driver knew the perilous situation of the ice wagon, then the court charges you that the driver of the ice wagon would be guilty of willful negligence, and if you find such negligence

was the proximate cause of the intestate's death, then you will answer the third issue 'Yes.'" And the judge further charged the jury, on the fourth issue, as follows: "If the jury find by the greater weight of the evidence that with knowledge of the fact that the boy was riding on the rear step of the ice wagon, said driver willfully and wantonly drove his wagon across the said car track, without either looking or listening for the approach of a car or giving any signal or warning of his intention to drive the wagon on or across the track, and shall further find by the greater weight of the evidence that the motorman in charge of said street car saw, or by the exercise of ordinary care could have seen, this boy on the rear steps of the ice wagon, if you find he was there, notwithstanding which he willfully operated said car at a speed between 20 and 30 miles an hour between Eighth and Ninth streets, in violation of the ordinance of the city of Charlotte, and that the aforesaid willful and negligent acts of the motorman and driver of the car and wagon were the sole and only concurring proximate causes of the plaintiff's intestate's death, then you will answer the fourth issue 'No,' independently of whether the plaintiff's intestate was a trespasser upon the ice wagon at the time of the collision or not."

The jury returned the following verdict:

"1. Was the plaintiff's intestate killed by the joint and concurrent negligence of the defendant, as alleged in the complaint? Answer: 'No.'

"2. If not, was the plaintiff's intestate killed by the negligence of the defendant Southern Public Utilities Company, as alleged in the complaint? Answer: 'No.'

"3. If not, was the plaintiff's intestate killed by the negligence of the defendant Standard Ice and Fuel Company, as alleged in the complaint? Answer: 'Yes.'

"4. Did the plaintiff's intestate, by his own negligence, contribute to his death? Answer: 'No.'

"5. What damages, if any, is the plaintiff entitled to recover? Answer: '$5,000.'"

Judgment on the verdict, and defendant Standard Ice and Fuel Company appealed.

*E. T. Cansler and D. B. Smith for plaintiff.*
*James A. Bell and Edgar W. Pharr for defendant Standard Ice and Fuel Company.*

WALKER, J., after stating the case: If the first assignment of error is sufficiently stated under our rules, we are of the opinion that it is without any substantial merit. It was competent to prove the custom

of small boys to jump upon the rear step of the wagon to ride and get bits of ice for several reasons, and, among them, to answer the contention of defendant that instructions had been given to the drivers not to permit riding on the wagon by small boys. If such order was given, the plaintiff surely was entitled to show that it had been constantly violated for a long time, with the knowledge of the drivers and those in charge of the wagon, from which the jury could well infer that the owner of the wagon had notice of its nonobservance, and that it was an order of the company more honored in the breach than in the observance, and, in legal contemplation, it had been abrogated, or at least waived. *Biles v. R. R.,* 139 N. C., 528; *Haynes v. R. R.,* 143 N. C., 154; *Smith v. R. R.,* 147 N. C., 603; *Bordeaux v. R. R.,* 150 N. C., 528; *Railway Co. v. Mobley,* 6 Ga. App., 33; *P. L. Co. v. Whitzel,* 118 Va., 161; *Robinson v. R. R.,* 71 W. Va., 423; *Railroad Co. v. Reager,* 96 Tenn., 128. It has been held generally that if a rule is made for the safety of the servant or others, but its customary violation has continued so long that the master either knew of it, or could by the exercise of ordinary care have found it out and acquiesced in it, he is presumed to have consented to its repeal, or to have waived obedience to it. *Smith v. R. R., supra; Biles v. R. R.,* 143 N. C., 78. But so far as the rule, or order to the drivers, in this case is concerned, it does not appear to have been observed at all, and boys were allowed to ride on the rear step of the wagon at their pleasure, even when the manager of it, who had left on this occasion, was there. All this evidence, and more, is sufficient to show, at least, the tacit consent of the driver and manager to such a course of conduct by them, and the jury have doubtless so found. If this be so, and it can hardly be disputed, the act of this young boy was not within the prohibition of the city ordinance forbidding it only when it is without the consent of the driver, or person controlling its movements and management. As this is a question of capital importance in the decision of the case, we will refer to some of the evidence bearing upon it: For many years it had been the habit and custom for small children to get upon and ride upon the rear of defendant's ice wagons, both for the pleasure of riding and for the purpose of getting small pieces of broken ice. In doing so they rode from door to door, and frequently for considerable distances out of the neighborhood in which they lived. So general had been this practice and so long continued that one witness, in referring to it, said: "It has always been." This custom was known to the officers and agents of the defendant company, or by the exercise of ordinary care they should have known it, and in legal contemplation the defendant did know of this custom. But aside from this legal presumption, actual knowledge of this custom, it seems, was brought home

to the defendant, its officers and agents. C. L. Hill, the man in charge of this particular wagon, testified: "Little fellows, six years old up. to eleven and twelve, had this habit of getting on the wagon." J. A. Eagle, assistant manager of the defendant company, in testifying with regard to this custom, said he had observed it "ever since he had been in the ice business." C. R. Moore, manager of the defendant company, said he knew of the existence of the custom "in a limited way." More than that, the defendant's driver knew of the custom, permitted it to grow up, and even encouraged it, offering the inducement of cool rides and bits of cracked ice. But the defendant contends that the admission of the evidence as to this custom was error, upon the general ground that it was an illegal custom and that it grew up in violation of an ordinance of the city of Charlotte, which declares "that no one shall ride or jump onto any vehicle without the consent of the driver thereof; and no person, when riding, shall allow any part of his body to protrude beyond the limits of the vehicle, nor shall any person hang on to any vehicle whatsoever." If that position were sound, then any defendant could escape the consequences of his wrongful act by the mere device of alleging and proving that his conduct had been unlawful. But even if the position of the defendant be a correct one, then it is equally true, as the record clearly shows, that this custom had grown up with the consent of the drivers of the defendant's wagons; and, therefore, it was not forbidden by the ordinance. In *Ferrell v. Cotton Mills,* 157 N. C., 528, and many other cases to like effect, evidence was admitted to show the custom or habit of small children to play upon premises where they were technical trespassers. If in those cases evidence was competent which proved a custom, in violation of the laws against trespass, then certainly in this case evidence of a custom in violation of an ordinance of the city of Charlotte was competent. Having permitted this custom to grow up, this defendant cannot take shelter behind his own wrong. "A habit of doing a thing is naturally of probative value as indicating that on a particular occasion a thing was done as usual; and, if clearly shown as a definite course of action, is constantly admitted in evidence." 1 Greenleaf's Ev. (16 ed.), sec. 14 J.

Leaving this subject, we come to the next material question in the case. Having concluded there was evidence that young Fry did not violate the ordinance, or that there was evidence that he did not, and the jury so found, was he guilty of contributory negligence? We take this matter up now before considering the issue as to defendant's negligence, as it is more nearly related to, and connected with, the one just before discussed. The jury found that he was not guilty of any negligence himself which contributed to his injury and death, but the defendant

contends that this answer of the jury was induced by an error of the judge in his charge to them, which they say is that "as young Fry was under twelve years of age, he could not be guilty of negligence." He was one month and seven days under twelve. This, we think, was error. The error consisted in charging the jury that the boy being under twelve years of age was incapable of committing the alleged negligent act which it is claimed contributed to his injury. The responsibility of an infant for contributory negligence is not necessarily a question of law and some expressions in our reports apparently to the contrary are misleading and contrary to the accepted and approved principle which governs in such cases. The question was so fully discussed, with a copious citation of the well considered cases in *Alexander v. Statesville,* 165 N. C., 527, that much further comment would seem to be useless. It was there held, as stated in the seventh headnote, that while a child of tender years is not held to the same degree of care as one of mature years in avoiding an injury arising from the negligent act of another, it is ordinarily a question of fact for the jury to determine, in his action to recover damages therefor, whether, under the circumstances, and considering his age and capacity, he should have avoided the injury complained of by the exercise of ordinary care; and in that case it appearing that the plaintiff was a bright boy of about 7 years of age, it was held that the court properly left the issue of contributory negligence to the jury. We cannot approve all that was said, with respect to this question, in *Baker v. R. R.,* 150 N. C., 562, and *Foard v. Power Co.,* 170 N. C., 48, though expressions will be found therein which seem to agree with the view herein stated. In *Alexander v. Statesville, supra,* we followed the rule as adopted by the Supreme Court of the United States in *Railroad Co. v. Gladmon,* 15 Wallace (U. S.), 401 (21 L. Ed., 114), and *Railroad Co. v. Stout,* 17 Wallace (U. S.), 657 (21 L. Ed., 745). *Gladmon's case* has been followed by this Court in *Manly v. R. R.,* 74 N. C., 655; *Murray v. R. R.,* 93 N. C., 92; *Bottoms v. R. R.,* 114 N. C., 699. In *Bottoms' case* the Court refers to *Gladmon's case* and *Robinson v. Cone,* 22 Vt., 213, as stating the correct rule, and takes this passage from the *Robinson case:* "All," says *Judge Redfield,* in delivering the opinion, "that is required of an infant plaintiff in such a case (where a child was injured in a highway) being that he exercise care and prudence equal to his capacity." The passage which we have taken from *Gladmon's case* was quoted by *Chief Justice Smith,* with full approval, in *Murray v. R. R., supra,* as containing a correct statement of the rule applicable in such cases. Numerous other cases are cited in *Alexander v. Statesville, supra,* at p. 536 of 165 N. C. It was held in *Westerfield v. Levis,* 43 La. Ann., 63 (cited in the *Alexander case*), that the rule which exempts a child of tender years from responsibility,

while it may not operate justly in every possible case, on the whole promotes the ends of justice, and the Court followed the authorities which held that a child of the age of appellant is *prima facie* exempt from responsibility, but also held that testimony is admissible to show the contrary, citing many authorities. We said in the *Alexander case* that upon the question of plaintiff's contributory negligence, the judge properly confined his charge to the second issue, which separately and independently involved an inquiry into that matter, as to the plaintiff's age and his incapacity arising out of his tender years, and it may be said that the question of contributory negligence on his part is not to be determined alone by the fact of his youth, except in extreme cases; but other considerations enter into the question, as, for instance, his degree of capacity or intelligence. Some boys are brighter, smarter, more precocious, and more capable than others who are much older, and better able to take care of themselves. The youth of the person must be considered, of course, but, with the qualifications already made, it is not the only test, and the presumption of incapacity to protect himself is not always a conclusive one. In *Rolin v. Tobacco Co.*, 141 N. C., 300, this Court said: "It is hardly necessary to add that contributory negligence, on the part of the minor, is to be measured by his age and his ability to discern and appreciate the circumstances of danger. He is not chargeable with the same degree of care as an experienced adult, but is only required to exercise such prudence as one of his years may be expected to possess. As the standard of care thus varies with the age, capacity, and experience of the child, it is usually, if not always, when the child is not wholly irresponsible, a question of fact for the jury whether a child exercised the ordinary care and prudence of a child similarly situated; and if such care was exercised, a recovery can be had for an injury negligently inflicted, no matter how far the care used by the child falls short of the standard which the law exacts for determining what is ordinary care in a person of full age and capacity," citing *Am. C. and F. Co. v. Armentrodt*, 214 Ill., 509; *Plumly v. Birge,* 124 Mass., 57; 7 A. & E., 409. Labatt on Master and Servant (Ed. 1904), sec. 348, says that the essential and controlling conception by which a minor's right of action is determined with reference to the existence or absence of contributory fault is that his capacity is the measure of his responsibility. If he has not the ability to foresee and avoid the danger to which he may be exposed, negligence will not be imputed to him if he unwittingly exposes himself to that danger. For the exercise of such measure of capacity and discretion as he possesses, he is responsible. And quoting from *Gladmon's case, supra,* this Court further says: "The rule of law in regard to the negligence of an adult and the rule in regard to that of an infant of tender years is quite differ-

ent. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. If he fails to give it, his injury is the result of his own folly, and cannot be visited upon another. Of an infant of tender years less discretion is required, and the degree depends upon his age and knowledge. Of a child of 3 years of age less caution would be required than one of 7; and of a child of 7, less than one of 12 or 15. The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case."

But if it be admitted that the boy was guilty of contributory negligence, the question whether it was the proximate cause of his death remains to be determined by the jury, under proper instructions from the court. "Where defendant, by exercising due care, can avoid the consequences of plaintiff's negligence, or he can discover plaintiff's peril in time to avoid injuring him, he is liable on his failure so to do." *Cullifer v. R. R.,* 168 N. C., 309. "The doctrine of the last clear chance applies where the defendant, after he discovers plaintiff's peril, or in the exercise of ordinary care should have discovered it, negligently fails to avoid the accident." *N. S. R. Co. v. White's Admr.,* 84 S. E., 646. The jury have found, with evidence to warrant the finding, that the driver knew the boy was on the rear step of the wagon, and had given him permission to ride there, and that, notwithstanding this knowledge, he drove onto the track, in front of the fast approaching street car, and his wagon was struck by the same, and this caused the intestate's injury and death. The driver of the defendant testified that some one drove an automobile between him and the curb of the sidewalk, which frightened his horses and caused them to turn and drag his wagon onto the track, but there was evidence to the contrary, and especially by a witness, who was riding in his automobile and a little behind the ice wagon, and who stated that he was in full view, and that no such thing occurred, and the jury, under the evidence and the instructions of the court, not only found that the driver's testimony was not true, but that, on the contrary, he drove both "negligently" and "recklessly" upon the track. This appears from the instruction of the court on the third issue, as set forth in our statement of the case and the verdict. He also drove on the track "willfully and wantonly," as appears from the instruction of the court upon the fourth issue. There was evidence that the wagon was driven upon the track in violation of a city ordinance, which provided that the driver, in order to cross over to the other side of the street, should make his turn at the intersection of Tryon and Ninth streets, or if he intended to go as far north as Tenth Street, then at the intersection of Tryon with Tenth

Street, and that, by the ordinance, he should have turned in on the north side of Ninth Street, or of Tenth Street, depending upon where he expected to make the crossing. The plaintiff contends, therefore, that he was acting, not only negligently, recklessly, willfully, and wantonly, but criminally, as he was violating the ordinance. We must construe the verdict always in the light of the evidence and the charge of the court, and especially as resolving all inferences in favor of the successful party. *Aldrich v. Railway Co.,* 79 S. E., 316. We have held repeatedly that the verdict must be interpreted "and allowed significance" by reference to the pleadings, testimony, and the charge of the court. *Owens v. Ins. Co.,* 173 N. C., 373; *Taylor v. Stewart,* 175 N. C., 199; *Bank v. Wysong,* 177 N. C., 284. If we follow these decisions and interpret this verdict by proper reference to the pleadings, evidence, and charge, there can be no doubt as to what was the conclusion of the jury, which is that the driver of the wagon, regardless of any contributory negligence of the boy, acted not only negligently when he had the chance to save him, but willfully, recklessly, and wantonly, and against such conduct as this finding implies, the contributory negligence of the boy is no protection or bar to the plaintiff's recovery. If the party injured is himself ever so negligent, the one who caused that injury is liable to him for the ensuing damages, if he was aware of the dangerous situation and caused the damage willfully, wantonly, or even recklessly, that is, if he did so without regard to the consequences of his act and being indifferent to the rights of others. It is said in a standard treatise: "The doctrine that contributory negligence will defeat recovery has no application where the injury is the result of the willful, wanton, and reckless conduct of defendant. . . . In order that one may be held guilty of willful or wanton conduct, it must be shown that he was conscious of the surroundings, and was aware, from his knowledge of existing conditions, that injury would probably result from his conduct, under the circumstances, and, with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." 29 Cyc., 509-510. And in *Brendle v. Spencer,* 125 N. C., 474, this Court held: "It is settled that contributory negligence, even if admitted, is no defense to willful or wanton injury. The finding of such injury by the jury eliminates all question of negligence on both sides. The defendant company is responsible for the willful and wanton injury occasioned by its employee while on duty in its service."

We do not mean to say that the driver's act in crossing at the wrong place, contrary to the ordinance, if he did so, would of itself constitute willfulness, but it may be considered as one of the facts or circumstances in evidence tending to show that his act was willful, as being entirely

regardless of the law and the safety of others. We have held that where a statute or an ordinance is violated it is such a distinct legal wrong that if it be the proximate cause of the injury to another, it will then constitute an actionable wrong or tort, but the jury must find the facts essential to ,the application of this principle. *Stone v. Texas Co.,* 180 N. C., 546, where the matter is fully discussed.

We finally conclude that there was some evidence from which the jury could find that the driver of the wagon was guilty of culpable negligence, or a distinct legal wrong, as hereinbefore defined by us, and the defendant itself may, therefore, be liable to the plaintiff upon the principle of *respondeat superior,* the driver being its servant and his illegal acts being imputable to the defendant. If knowing that the boy was on the wagon, and he was there by the driver's consent, or permission, the defendant would have to answer for his negligence if he exposed the boy to impending danger in crossing the track too near to the approaching street car, and especially so if the act of crossing the track under the circumstances was forbidden by the ordinance, and was the proximate cause of the injury to the boy which caused his death.

This Court will not undertake to decide the case upon the evidence, but will leave its weight and sufficiency to the jury. It may be that the defendant's construction of the evidence is the correct one, and that the plaintiff's is not. The Court must not be understood as intimating any opinion at all upon the weight of the evidence, or any of it, but as leaving its sufficiency to establish the contention of the plaintiff, or that of the defendant, entirely to the jury, with proper directions from the court.

The error of the judge as to the contributory negligence of the boy is of sufficient importance to have been prejudicial to the defendant, and because of it a new .trial must be had in order that the case may be submitted again to the jury under proper instructions.

New trial.

CLARK, C. J., concurring in a new trial: In this case the plaintiff's intestate, a boy 11 years, 10 months, and 23 days old, jumped up behind an ice wagon passing through the streets of Charlotte and was killed in a collision between the ice wagon and the car of the Charlotte Street Railway Company. There was an ordinance of the city of Charlotte which made his conduct a misdemeanor, and there was a standing order by the Standard Ice and Fuel Company, the owners of the wagon, against such conduct, and the boy had no permission from the company, or permission of the driver, to ride on the wagon on that or any occasion. At the trial of the case there were two patent errors which require a new trial:

1. The judge charged the jury that the plaintiff's intestate "could not be guilty of contributory negligence because under 12 years of age."

2. The case should have been nonsuited on the further ground that the defendant owed no duty to the boy, who was illegally riding on the rear of the wagon in violation of the city ordinance and standing orders of the defendant company, except that it should not injure him wantonly or willfully, which is not even suggested.

As to the first proposition: The boy jumped upon the defendant's wagon, with full legal notice that he was forbidden to do so by an ordinance of the city, and the owners had constantly forbidden any one to do so. Furthermore, the court in this case charged the jury: "If you shall find by the greater weight of the evidence in the case that the plaintiff's intestate, at the time he was killed, was under 12 years of age, then there was a *presumption of law* that the boy was incapable of so understanding and appreciating danger from the alleged negligent acts or conditions produced by others as to make him guilty of contributory negligence." A presumption of law is irrebuttable, and therefore this charge was, in effect, that if the boy was under 12 years of age he could not be guilty of contributory negligence. The decisions of the courts, without exception, are all to the contrary of this. Whether a boy of that age could be guilty of contributory negligence or not depends upon the findings of fact by the jury under proper instructions as to the capacity of the boy and the duty which the defendant owed to the boy under those circumstances. See *Jacobs v. Koehler* (N. Y., L. R. A., 1917, F. 7, and annotations thereto, pp. 10 to 164, on "Contributory Negligence of Children"—very exhaustive).

It is impossible to reconcile the charge in this case with the ruling by which the plaintiff, a younger boy, was nonsuited in *Butner v. Brown,* 182 N. C., 692 (last term), because he was held conclusively guilty of contributory negligence. In this case a boy a year older was held by the trial judge incapable of contributory negligence. In both cases a jury trial of this issue was denied, but for absolutely opposite reasons. By no process of reasoning can the two decisions be reconciled. There are probably in this State more than 50,000 milk wagons, grocery, and other store wagons, express wagons, and other vehicles employed in the discharge of similar duties. All their owners can do to prevent such accidents as this is to prohibit boys engaging in the sport from riding behind their wagons, as was done on this occasion. This prohibition was supplemented, in this instance, by the public ordinance of the city of Charlotte, of which the public are presumed to have notice. The company assumed no duty towards the boy, for it was not a common carrier. It did not injure him by any intentional act on the part of any of its employees.

If, under these circumstances, the owners of these thousands of vehicles, engaged in the necessary traffic of our streets, are to be made insurers of the safety of all boys who are injured while riding on the rear of their wagons—for it is insurance if there is a legal presumption that a boy of that age cannot be guilty of contributory negligence—then this decision will have added immensely to the liability of all persons or companies engaged in that or any similar business.

It is not too strong to say that there can be found no statute nor any decision which will justify the charge which the court gave, that a boy of that age, "as a presumption of law," could not be guilty of contributory negligence. Aside from the fact that the contrary was held in the *Butner case,* at the last term, and in numerous other cases, in *Baker v. R. R.,* 150 N. C., 562, this subject was fully discussed and it was determined by a unanimous Court as to the inquiry. "At what age must the responsibility of an infant for contributory negligence commence?" that upon all the authorities, "An infant's responsibility, so far as he is personally concerned, is held to be such care and prudence as is usual among children of the same age, and if his own act directly brings the injury upon himself, while the negligence of the defendant is only such as exposes the infant to the possibility of injury, the latter cannot recover." The Supreme Court of the United States has subsequently held the same to be sound law.

In *Wilson v. R. R.,* 66 Kansas, 118, the Court held that where a boy 12 years of age was swinging or jumping from one freight car to another and fell and was injured, he was guilty of contributory negligence as a matter of law.

In *Jollimore v. Connecticut Co.,* 86 Conn., 314, it was held that a bright boy 11 years of age, who was playing in the streets and was killed by a street car, was guilty of negligence as a matter of law.

In *Moran v. Smith,* 114 Me., 55, it was held that a child 8 years old, who attempted to run across the street in the face of an approaching automobile, and who was struck and injured, was guilty of contributory negligence.

In *Baker v. R. R.,* 150 N. C., 565, above cited, this Court, in discussing the question of contributory negligence, and whether it was a question for the court or the jury, says: "The responsibilities of infants are clearly defined by text-writers and courts. At common law, fourteen was the age of discretion in males and twelve in females. At fourteen an infant could choose a guardian and contract a valid marriage. After seven, an infant may commit a felony, although there is a presumption in his favor which may, however, be rebutted. But after fourteen an infant is held to the same responsibility for crime as an adult." And then this opinion adds almost in the same words of the later case of *Foard*

*v. Power Co.,* 170 N. C., 48, as follows: "We find in the books many cases where children of various ages, from seven years upward, have been denied a recovery because of their own negligence."

In *Alexander v. Statesville,* 165 N. C., 528, it was held by *Mr. Justice Walker* that the question whether a child is guilty of contributory negligence is a question for the jury upon the evidence as to his age and capacity, and in that instance held that there, where the plaintiff was a boy seven years old, the court properly left the question of contributory negligence to the jury. To the same effect, *Raines v. R. R.,* 169 N. C., 189. But in the present case the judge relieved the jury of deciding that question by telling them that as a matter of law "a child under 12 years of age could not be guilty of contributory negligence." He lacked a month and 7 days of being 12 years old.

Secondly. Irrespective of the erroneous charge in regard to the boy under 12 being incapable of contributory negligence, this case presents the question of the responsibility of the owner of a wagon, or other ordinary vehicle in common use upon the streets, for lawful purposes to a trespasser, or bare licensee upon such vehicle.

The settled principles applicable are:

1. The plaintiff's intestate at the time of his injury, upon this evidence, was a trespasser on the defendant's wagon, and, as such, exposed himself to any risk incident to his position. The defendant did not willfully or wantonly injure him, nor was he purposely injured by the acts of its employees. As to negligence in the collision between the defendant's wagon and the street car, that was a matter between those companies, and in no wise affected the duty of the defendant to the intestate.

2. Even if the intestate had been on the wagon with the implied consent of the defendant company, he was there solely for his own pleasure and purposes, and was at most a bare licensee. He was not injured by any defect in the construction or use of the ice wagon, and there was no breach of duty towards him by the defendant company. No phase of the evidence presents any aspect of willful or wanton conduct to the plaintiff's intestate.

Thirdly. In this case, whether the defendant or the street car company was negligent in causing the collision is a matter which does not affect the liability of the defendant towards the boy.

He was forbidden to ride on the wagon by the authorities of the company and by an ordinance of the city, and did so at his own peril. No employee of the defendant company injured him, and there is an entire absence of allegation or evidence that he was willfully or wantonly injured by the defendant or any of its employees.

The plaintiff's intestate was "intelligent for his age"; was prepared to enter the fifth grade in school, showing he had advanced in the city schools year by year. The evidence is that there was no obstruction between the wagon and the oncoming car. The intestate knew necessarily the danger of a collision between the street car and the wagon. It cannot be said that a 12-year-old boy of normal intelligence did not realize the danger he assumed in jumping upon the wagon. There was no difficulty about his getting off the wagon as easily as he got on, and the only reasonable explanation of his remaining on is that he was negligent of the danger he was assuming.

Neither is this case like *Pierce v. R. R.,* 124 N. C., 83, where the boy jumped on the rear of a shifting engine and was knocked off by the fireman throwing a piece of coal at him. The deceased in this case was not injured by any act of any employee of the defendant company. Nor is it the case where the boy was attracted by a novelty as in the "attractive nuisance" cases, nor yet is it an instance where the boy was permitted to ride on the wagon by the custom or consent of the management of the defendant company. On the contrary, it is in evidence that the defendant had given the strictest orders that boys should not be so permitted to ride on their wagons, and the city of Charlotte had passed an ordinance forbidding them to do so and making it a misdemeanor. The defendant had done everything in its power to prevent the deceased committing this trespass, and to prevent boys from exposing themselves to the danger of so doing.

In Thompson on Negligence, secs. 946 and 949, discussing the question as to who are trespassers or bare licensees, says: "One entering the premises of another with his consent, but without his invitation, and not in the discharge of any public or private duty, is a bare licensee within the rules governing this branch of the law of negligence."

The fact that the plaintiff's intestate was a boy 12 years of age is not an exception to this rule. Judge Thompson says in the same work (sec. 1025): "The generally accepted rule does not impose upon the owner or occupier of premises the duty to exercise a greater degree of care in anticipation of their invasion by trespassing children. No distinction is made between trespassers as to their age. Both children and adults take the premises as they find them."

In *Peterson v. R. R.,* 143 N. C., 265, where the plaintiff went upon a railroad train at a stop for the purpose of buying fruit from the fruit vendor on the train, and was hurt by the negligent movement of the train, *Connor, J.,* declared the relation and obligation of the parties to be as follows: "When the plaintiff went into the train at the station for the sole purpose of purchasing fruit, without invitation or induce-

ment, but simply by the silent acquiescence of defendant's agent, he was a mere permissive licensee, and took the risk incident to the moving of the train, and, in the absence of any wanton injury, the motion for nonsuit should have been allowed."

In this instance it is clear that the intestate was simply a trespasser, but if he were a licensee, *Judge Connor,* in *Peterson v. R. R.,* 143 N. C., 265, thus lays down the well established rule: "A licensee who enters upon premises by permission only, without any enticement, allurement, or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstruction or pitfalls. He goes at his own risk and enjoys the license subject to its concomitant perils."

This case is much stronger for the defendant. If it were a fact that the intestate had seen other boys riding on the steps of the ice wagon, it was not an implied permission to him to so ride. Certainly it was not an invitation or inducement. The boy was not on the step by any invitation or offer to give him ice or to take a ride. The riding on the wagon was positively against the rules of the defendant company and the driver testified, without contradiction: "My instructions, without exception, were to keep all persons off the wagon." Indeed, every driver who went upon the stand testified that he did the best he could to keep boys off. In *Briscoe v. Power Co.,* 148 N. C., 407, where the intestate was a boy 13 years of age and fell into a well of hot water not properly covered over, the Court held him to be a trespasser, or, at most, a bare licensee, and uses this expression, "If the exception is to be extended to this case, then the rule, indeed, as to trespassers must be abrogated as to children, and every owner of property must, at his peril, make his premises child-proof."

There is absolutely no evidence in this case to justify the submission of the issue of wanton or willful negligence or reckless negligence, and the court erred in refusing the request to charge the jury that there was no evidence of willful or wanton negligence on the part of the defendant.

There is no evidence in this case that the intestate had ever before ridden on the wagon, and the evidence is that all drivers tried to keep the children off the wagons, and that the instructions from the company to do this were emphatic and repeated. Besides, as already stated, the ordinance of the city of Charlotte made it a misdemeanor for any one to "ride or jump onto any vehicle without the consent of the driver thereof," or for any person to "hang on to any vehicle whatsoever." Viewing the evidence in its strongest light in favor of the plaintiff, the motion for nonsuit should have been allowed. There was no evidence of breach of duty towards the plaintiff's intestate nor was there any such negligence as would entitle the plaintiff to judgment.

In *Butner v. Brown,* 182 N. C., 692, at last term, this Court sustained a nonsuit where a boy 11 years of age was injured by the operation of an unguarded cogwheel in the defendant's mill, though the uncontradicted evidence was that the boy, and others of like age, had been permitted, without objection, for years to · enter the mill at will, and that there was no notice or warning given that they should not do so, and the boy lost his arm because the defendant had not guarded the dangerous machinery, which, by the consent of the defendant's operator and its own custom, he and other boys had been permitted, without objection, to approach by visiting the mill at all times. Yet there a nonsuit was sustained, but in this case there was no defect in the machinery or car, and the intestate was not hurt thereby.

This case is one of wide and far-reaching importance. The court erred in allowing admission of testimony about a custom which had been declared (if it existed) by the city ordinance to be unlawful, and in refusing to give the defendant's prayers for instructions, and in the charge as given, and especially in refusing to allow the defendant's motion for nonsuit upon the ground that upon the evidence the intestate, because under 12 years of age, "could not be guilty of contributory negligence."

On a careful perusal of the record, it is a reasonable inference that the question really tried by the jury was solely whether the defendant ice company or the street car company was proximately liable for the collision, leaving out the real issue whether the ice company, in either event, was liable to the plaintiff's intestate, who was a trespasser, and, besides, was guilty, upon the plaintiff's own showing, of contributory negligence in violating the town ordinance and the prohibition of the defendant company.