W. G. BYERS, ADMINISTRATOR OF WILLIAM PRICE, v. BOICE HARD-
WOOD COMPANY AND W. H. STOUGHTON.

(Filed 15 June, 1931.)

1. **Master and Servant C c—Evidence of habitual violation of rule by em-
ployees held properly submitted to jury on question of its abrogation.**

   Where there is a rule for the protection of the employees of a logging
   road requiring them to apply the brakes on the rear of the car to prevent
   their being run over and injured by the car in the event they are thrown
   therefrom, and a violation of this rule proximately causes an injury, the
   employer is not liable, but where there is evidence that the rule had been
   openly, constantly and habitually violated for so long a time that the
   employer in the exercise of ordinary care and diligence knew or should
   have known thereof, it should be submitted to the jury on the question
   of whether the rule had been waived or abrogated.

2. **Master and Servant C g—In action under C. S., 3467, against logging
   road contributory negligence is not a complete bar to recovery.**

   The contributory negligence of an employee of a steam logging road
   will not completely bar a recovery when the negligence of the defendant
   is a proximate cause of the injury. C. S., 3467.

3. **Death B d—Instruction as to damages recoverable in action for wrong-
   ful death held correct.**

   The rule for damages recoverable for a wrongful death was correctly
   given in the instructions in this case. *Ward v. R. R.*, 161 N. C., 179;
   *Pickett v. R. R.*, 117 N. C., 616.

CIVIL ACTION, before *Barnhill, J.,* at September Term, 1930, of
HAYWOOD.

William Price was killed on 8 May, 1929, and the plaintiff as the
administrator of his estate, brings this action to recover damages for
the wrongful death of his intestate. Prior to the date of his death
William Price had been working for the defendant on a logging road
which the defendant operated for the purpose of hauling logs from the
mountains to the mill. In addition to acting as foreman on a logging
engine, the intestate also helped in switching and braking operations.
The manner of his death as detailed by an eye witness was substan-
tially as follows: "The morning William Price lost his life they set a
car upon the sidetrack and Steve McLaughlin pulled it with his engine
and Bill Price tied up the brakes on those. He went to the front end
of the car and tied up the brakes. By tying up the brakes I mean, brake
it, which holds the car, putting the brakes on and tightening it up.
I couldn't describe the brake to the jury exactly; the chain winds around
a spool, and the spool is between two bars at the top of the car. This
car was a skeleton narrow-gauge car. . . . The tie bars go across

and the bolt that ties the brake is behind the tie bars. The engineer placed this car on the main line track, and then the engine was disconnected with this car. The engine was over to the left on another track, and the purpose of leaving the car there and putting the engine on the sidetrack was in order to drop it and get it behind the engine. Where this car was left it was about six per cent grade, I suppose. I didn't see William Price put on the brake, but after the engine was disconnected and put over on the sidetrack I saw William Price go on top of the car and release the brake. When you release the brake you knock it off with a jim crow; that is what they use to tie it up and to release it. . . . Price walked up and knocked the brake off; the brake is held by a catch. There is a cog wheel and you knock that catch out and the brake flies off. Price stepped up on the car to knock the ratchet loose, and he went to the usual and ordinary place where brakemen go to on that kind of car to release it. After he released it he tried to tighten it up and the car started as soon as he knocked the brake off; the car got pretty fast, twenty miles an hour, I guess. I saw Price try to tie the brake and it fouled him. . . . There is a wheel at the top of the brake and the jim crow is a piece of iron, and it fits down in the spokes of the wheel. When he pulled it he was pulling it toward his body and the jim crow released all at once before he fell off. . . . Immediately after Mr. Price's death I went to the car and found the rod fouled against the cross bar. The brake rod fouled against the tie bar, and by 'fouled' I mean, dropped behind it. . . . The reason the rod fouled was it was too short, and the man operating the jim crow, trying to release or put on the brake when that is fouled behind the cross rod can't pull it up there. When the rod is fouled and you go to pull it, it will move. I saw him pulling against the crank, and when he pulled against it, it released all at once and pitched him off. . . . When I got to him he was dead. . . . The car Price was working on was No. 24. I saw the car he was working on every day, and after William Price was killed we looked at the wheels and some of them were a little flat. From the time the brakes were released up to the time he fell off the car run about 50 yards with him, and the car was bouncing. . . . It was not the rule of the company there to brake only from the rear of the car; I never heard that rule proclaimed by Colonel Stoughton or others, and nobody ever told me about it. The rule was to tighten up either brake you come to first. . . . I used the first brake I came to, and from time to time I would brake from the front of the car when Colonel Stoughton and Mr. Boice and other officers of the company would be present. No official of the company ever told me not to brake from the front end of the car."

The defendant offered many witnesses and much evidence to the effect that the company had promulgated a rule that a brakeman should brake from the rear of the car so that if he was thrown off his body would not be in front of the moving cars. There was evidence that the deceased himself had been instructed not to brake from the front of the car. There was also positive testimony from numerous witnesses for the defendant that there was no defect in the brake or the wheel.

Issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of plaintiff. The jury awarded damages in the sum of $7,250. From judgment upon the verdict, the defendant appealed.

*Morgan, Ward & Stamey for plaintiff.*
*Queen & Alley and Alley & Alley for defendant.*

BROGDEN, J. The first group of exceptions relates to evidence to the effect that the rules requiring brakemen to brake from the front of the car had been violated by employees other than the deceased. The evidence for the defendant, coming from numerous witnesses, tended to show that the rules of the company prescribed that a brakeman should brake from the rear of the car, and that William Price, in open violation of the rule, undertook to brake from the front of the car, and that such violation of the rule was the proximate cause of his death. The evidence for plaintiff tended to show that no such rule had been promulgated, and if such rule had been prescribed, it had been so openly and frequently violated as to work an abrogation or revocation thereof.

Any reasonable and proper rule, designed for the protection of an employee in performing his duties, will bar recovery provided such rule is alive and in force, and such violation was the proximate cause of the injury. *Biles v. R. R.,* 139 N. C., 528; *Boney v. R. R.,* 155 N. C., 95; *Fry v. Utilities Co.,* 183 N. C., 281; *Hayes v. Creamery,* 195 N. C., 113. But if such rule has been openly, constantly and habitually violated for such length of time that the employer in the exercise of ordinary care and diligence knew or should have known of such habitual nonobservance, then the rule is deemed to be waived or abrogated. Hence, the evidence objected to was competent upon the vital question as to whether the rule in controversy was alive and in force.

Another group of exceptions relates to the ruling of the trial judge in instructing the jury that contributory negligence, if any, of plaintiff's intestate was not a complete defense and bar to recovery under our statute. C. S., 3467, has been construed in many decisions of this Court. *McKinish v. Lumber Co.,* 191 N. C., 836; *Stewart v. Lumber Co.,* 193 N. C., 138; *Jones v. R. R.,* 194 N. C., 227; *Hawkins v. Lum-*

*ber Co.,* 198 N. C., 475. An examination of the charge to the jury discloses that the trial judge correctly applied the law as set forth in the decisions.

Another group of exceptions relates to the charge of the trial judge upon the question of damages. The record discloses that the trial judge applied the law as announced in *Ward v. R. R.,* 161 N. C., 179, and in *Pickett v. R. R.,* 117 N. C., 616.

There was exception to the failure of the trial judge to sustain the motion of nonsuit. Obviously, this ruling was correct. There are certain other exceptions in the record, but none of them are sufficient to overthrow the judgment. Indeed, a careful perusal of the record discloses that the merits of the case rest upon an issue of fact upon which the evidence was conflicting and irreconcilable. Hence, the verdict of the jury determines the rights of the parties.

No error.